May it please the Court, Your Honor, Jamie Lau on behalf of the Appellant Ronnie Wallace Long. The issue before the Court is whether the State MAR Court unreasonably applied clearly established Supreme Court precedent when determining that the favorable suppressed evidence considered cumulatively was immaterial. The Supreme Court has said whether evidence is material depends on if in its absence defendant received a fair trial understood as a trial with a verdict worthy of confidence. Here in light of the suppression there's no reason to have confidence in the verdict. The suppressed evidence was strong evidence pointing away from Long as the assailant and towards a mistaken ID by the victim. It revealed that officers testified falsely in a misleading way at Long's trial and resulted in arguments from the prosecutor in closing that are now known to be supported by the evidence. This case is very much like the Barbie case from the circuit because law enforcement officers suppressed the evidence not only from the defendant but also from the prosecutor. The prosecutor Ron Bowers testified in the State MAR hearing that he didn't have the evidence that was suppressed in this case because he didn't know about it from law enforcement officers. Before we get to what I understand the meat of the argument and what I primarily want to focus on, help me understand a little bit of the framework that we're in. 2244B2 which is the sort of framework I think given the successive habeas petition. Do you agree that that is a jurisdictional requirement for the district court? Yes, we have to meet the requirements under 2244B2B2 to show that by clearing convincing evidence no reasonable juror would have convicted Long but for the constitutional error. And here what we have, in essence there are basically like three, two important parts of that, we could call it three but I'll call it two. And one is that there is a constitutional violation and two that but for that constitutional violation or with the addition of the evidence that was suppressed in this case no reasonable jury would convict. That's correct, your honor. And the district court below, magistrate judge adopted by the district court addressed only the first issue, right? That is was there a constitutional violation? That's correct, the district court. And so if, it's just framework, I think these are easy, right? And so if we agreed with you that the district court got that wrong, and I'm not at all suggesting that's the case, the result for that would be to send it back to the district court to determine this second part which is no reasonable jury could conclude that he was guilty. That's correct, your honor. Or on the record, given that it's a state court record that's before the court, I believe that the facts here are so compelling that this court could decide the jurisdictional issue with the facts in front of it but definitely it has to be determined before the merits of the case can be decided in this case. This case, similar to Barbie, is a due process violation in that this powerful evidence was suppressed from the defendant. And in Barbie, this court said, we cannot condone the attempt to connect the defendant with the crime by questionable inferences which might be refuted by undisclosed and unproduced documents then in the hands of the police. This procedure passes beyond the line of tolerable imperfection and falls into the field of fundamental unfairness. This is precisely what this case is about. The police cleansed the record of evidence pointing away from Long to ensure that he was convicted on the basis of a weak, flawed identification. To do this, officers took extraordinary measures. You make that claim there and you make it a number of times in your brief that this was, you know, they cleansed the record, that this was a conspiracy to convict Mr. Long. Tell me why, I get the idea that you believe that's a necessary part for your story. Otherwise I wouldn't be hearing it so repeatedly. Why is it that a mistake in your mind wouldn't be sufficient, right? So if these officers just simply made a mistake, and I'm not hypothesizing one way, but if that was the finding, why wouldn't that be enough to satisfy your burden? The mistake would be enough to satisfy the burden because false testimony was introduced at the trial and whether or not that false testimony was introduced intentionally doesn't change the fact that it was false. Of course, there's much more here and that's why we describe these acts as intentional. What was the false evidence? The officer testified that there was only a single item or two pieces of evidence that was brought to this SBI crime lab. A latent shoe print that was taken and collected from the crime scene as well as prints from known shoes that belonged to Long. He then testified that all the other evidence remained in his possession throughout the course of the investigation, never left his possession. The true facts are that 13 additional items of evidence were brought to the State Bureau of Investigation crime lab. They were believed to be probative of the perpetrator of the crime and all the testing that was done on those items of evidence by the State Bureau of Investigation crime lab indicated no connection between Long and the crime. They just were negative, right? They didn't exclude him like the absence of evidence is not evidence of absence. Well, they were negative, but... The leather jacket that doesn't have paint flakes on it. They explained, well, leather doesn't hold paint flakes very well. And so they never reported the fact they didn't find paint flakes on the leather jacket. The fact is there's nothing exculpating and nothing inculpating. So, and that was most of the evidence that they addressed. And I know it can be cast in different light and your argument is, well, we could have paraded that in front of a jury to say there was nothing there to inculpate. Well, it's a little bit like finding a lot of items around the scene of a crime and no fingerprints were lifted. That doesn't exculpate or doesn't inculpate. So I'm just challenging the importance of it. You're elevating very high and there has been no challenge to the identification evidence, which was, I think lineup evidence is terrible evidence just as a matter of abstract, but this identification was much more carefully done and the defendant was much more sure of herself in what she was doing. So the jury heard all that and made a, I'm sure that was a big item of evidence. Two points, Your Honor. With respect to the evidence pointing away from Long as the Assailant, it does have a powerful impact. Why did it point away? It pointed away because law enforcement officers believed it to be probative. No, they just collected the evidence around him and some of it two weeks later, I mean from his car. They collected several items of evidence on the night of the crime. Those items of evidence were collected from the victim, they were collected from the crime scene, and they were also collected from Long later on. That evidence collected from Long was evidence that was used as standards to compare to the evidence collected at the crime scene. The evidence collected at the crime scene included a hair that was believed to be hair probative of who was the individual who commissioned the crime. Why did you say that? That's the type of jump that doesn't work. They find a hair near the scene of the crime. That hair could be from one of a hundred people. And the question is, it's only when the hair matches somebody, right? Well, the hair has, the negative result has powerful implications on all the evidence they collected. And they never turned any of those negative results over to the defense? They never turned any of them over to the defense. And doesn't it say something that the officer felt compelled to lie about what he took to the crime lab? He lied under oath about it? That's correct. Certainly says that officer must have thought it was of some, enough import to lie about it. The actions of the officer certainly... Can you point, what in the record suggests that he lied as opposed to was mistaken? And this sort of goes back a little bit to the earlier point that you and I had. I understand your implication, but can you point me to something in the record that reflects that it was a lie and not a mistake? Well, two reports, summary reports of the evidence, and the magistrate judge wrote that these summary reports, there was no explanation for the second summary report that was drafted to comport with the testimony that was given at trial. So the second summary report comports with that testimony, indicating that that testimony was intentional to conceal the evidence from Long, or to keep from the discovery of the testimony. Is there anything else, or is that the... I just want to make sure I understand in evaluating whether it is like a lie, we get it's false. The question is, is it a lie, or is it a mistake? Is there anything other than this sort of supposition based on existence of two reports? There is, Your Honor. The records related to the physical evidence in this case were not, and at some time were, I don't know, purged is the right word, but were not in the master case file of the Concord Police Department, which indicates that at some point in time, the testing related to those items of evidence had been removed. It was only discovered in 2007 when provided by the State Bureau of Investigation. The same can be said for the sexual assault evidence kit that was collected from the hospital that night. There is no record in the Concord Police Department's master case file related to the collection, possession, that sexual assault kit. Seemingly, all the records related to this physical evidence collected and tested was, at some point, extracted from that file, and it only came to light when the SBI provided... Extracted. So why do we think extracted as opposed to never put in? I mean, if it's never put in, this is the problem, right? I mean, you've got case files. I'm certain on occasion, if you've done this enough, you've got a case file that doesn't have something in it because you forgot to put it in. I understand it might have been extracted, but it might also just not have been put in, and I'm not sure why we immediately jumped to this, like, broad-based conspiracy, like, willful lie misconduct when there's just as equally likely... I'm not saying it was not false, but I don't understand the... Well, assuming that it wasn't an intentional misconduct... Because there was one summary of the evidence that said there were 15 pieces of things taken to the lab, and then suddenly there's another summary by the same officer that there's only two. Surely he knows the difference between two and 15. That's correct, Your Honor. The seemingly change between the first summary to the second summary demonstrates that the officer was trying in the second summary to keep from the defendant the beneficial test results that were found. Do we know that there... And I've not looked at the specific document. Do we know the timing on those that one was done before the other? One of them was dated, and the other, yes, was done after the results came back from the SBI laboratory because it mentions that the latent shoe print had been tested by the SBI laboratory. And that's the one with 15 items. No, Your Honor. That's the one that comports with the testimony. It only has two items listed on it. So that shows that there's some effort to keep this report in line with the testimony that was given at trial. Is it in the record what the question and answers were at trial by the officer about the... About that he only took two? That is in the record. I guess I should say where in the record. Specifically on the appellant's brief on page 11, continuing on to page 12. And that testimony can be found on the joint appendix, page 411 through 14, as well as page 415, Your Honor. To see the import of this evidence and how it undermined the fairness of Long's trial in its absence, there's three things. First, there's the fact that the testimony misdirected and misled on what was precisely brought to the lab. There's the second report to comport with that testimony. There's arguments from the prosecutor. The prosecutor argued, and it can be found in the joint appendix at page 536, Boss' testimony is not only accurate but totally consistent with every piece of physical evidence in existence. So the question this officer was asked at trial was on May 11th, he says, what did you do on May 11th? I went to the state investigation lab. Did you take any items with you when you went? I did. What did you take? And he only lists the two items, when in fact he took 13 other items that just didn't turn out to be helpful to the case. Correct. That's a lie. That's a lie. And all the material that was... Well, it's full. I totally get that it's false. And it might be a lie based on... Incompetent. May be, right, but incompetence and lying are not the same. And it may be based on these two reports, and I'll go study those. But I think the falsity itself doesn't prove that it's a lie. But it certainly undermines the fairness of Long's proceeding, which is the important question, is whether or not in the absence of the evidence he received a fair trial. And if the jury had heard perhaps on cross, in fact, officer, you didn't only take two items, correct? You took 13 other items. And those items didn't turn out to corroborate your version of the case. That certainly could have had an impact on the jury. Absolutely, Your Honor. And Jim Fuller, who represented Mr. Long at the trial, explained this at the state MAR proceedings in joint appendix of page 1099 and 1100. He said, one exclusion, sure. Evidence of absence is not... Absence of evidence is not evidence of absence. So one result, perhaps you're not going to make any hay with the jury. Two results, you're moving that jury. Three, four, five results, not connecting Long to the crime scene becomes dynamite evidence to undermine the identification and show that the victim was likely mistaken. And this is also found in social science research on how juries behave. And that research has been highlighted by the amici brief by law professors in this case. I see that my time is up. Thank you. Thank you. Mr. Gelford? Judge Richardson and Judge Thacker, the answer to that question could easily have been resolved on the state post-conviction motion for appropriate relief. The petitioner declared Eisenhower was a critical witness to Judge Bridges. We must have him to explain what happened. Did he lie? Was there a mistake? What about these 13 items? But then by the end of the hearing, any defendant would have wanted to know that information. Any defendant except this petitioner. This petitioner intentionally chose at the end of the state post-conviction hearing not to call Officer Van Eisenhower. And so that matter, also Officer Taylor, the lead investigator for the case, Officer Taylor was in the courtroom. The judge acknowledged his presence in the courtroom. Both parties acknowledged the presence. And he could, if there was some discrepancy on the matches, he could have called and should have called Officer Taylor. But he intentionally chose not to call either Van Eisenhower or Officer Taylor. Help me understand a little bit about, you know, one of the things that I wanted to get to your colleague about and we didn't get to, you know, the 2008 Marr Court, in the process of reaching its conclusion, appeared to make quite a few factual findings about the identification that Judge Niemeyer referenced about, you know, his, the conclusion that there was no doubt that a jury would have been unaffected by this evidence. Are those, help me understand what findings of the 2008 Marr Court were required under 2254D to give substantial deference to on the factual side. I'm not talking about the legal side. Yes, your Honor. On the factual side, even going back to Townsend v. Sain. I understand the principle. I want to know what are the facts. What are the important facts from your perspective? The identification was strong and reliable. There was this, Sarah Bost, she gave a... And that is, that strong and reliable finding is a factual finding by the 2008 Marr Court entitled to our deference. Yes, your Honor. And it's also based on that court's finding that there were multiple points of identification. That is, face, demeanor, voice, diction, whatever, that list, the court gave it. All of those are facts that we're required to give 2254D deference to. Yes, your Honor, that is. And this new evidence, all these 13 items, they're at best neutral. They don't overcome the strong, positive eyewitness identification. Sarah Bost looked straight at, she laid on the pole and a well-lighted... Then why not give them to the defense? I'm sorry? If they're merely neutral, why not give them to the defense? We don't know why they weren't given to the defense. As I say, the petitioner has precluded us from ever knowing that. Isn't that something that the jury might have wanted to hear? Had they known that on May 11, 1976, I'm looking at the lab report that was submitted, that that detective actually took 15 items to the lab, but he said he took two? Pollen v. Penholster now precludes the federal court from ever reviewing that, because this petitioner chose strategically not to call Van Eisenhower and have him explain... What happened to the rape kit? I'm sorry? The rape kit. What happened to it? The physical evidence... This is a rape case, right? It was a rape case, and the state put the doctor on the stand, and he testified, I took vaginal swabs, I had slides, I had semen corked in a test tube. The petitioner knew about it. His lawyers were sophisticated, professional lawyers, and if they had wanted to have those items tested, it would have been tested. Wait, did the government turn the rape test results over to the defense? There was no rape... The physical evidence was never tested, and the state never contended that it was ever tested. The state's evidence was fully consistent with the petitioner's argument to the jury that there was no connection... So the state never tested the rape kit. That's correct. Why? It's a rape case. This is 1976, Your Honor, and the forensic evidence was not such a big deal back then. Well, then why do a rape kit? Why put the doctor on the stand? There was not a per se rape kit, there was just a physical examination and things taken. If they had wanted it, the Chambers Law Firm would have had those items tested. They didn't want it tested because they knew that it could possibly be inculpatory rather than exculpatory. Well, then if it was possibly inculpatory rather than exculpatory, that's more reason for the state to have it tested. We wouldn't have to be arguing about it. I don't understand why the state doesn't have the rape fluids tested in a rape case. This was 1976, Your Honor, and forensic evidence did not hold the same majesty that it holds now in light of DNA and the CSI effect. You had a positive, unequivocal eyewitness identification. She looked square in his face while he was raping her. Right. Now, while he was... While he was raping her in the hall, she looked squarely into his face. Why did the state bring the defendant... Why did the defendant come to their attention in the first place and bring him into a courtroom where she could identify him? That may look unusual and odd by modern standards, but it's not unconstitutional and it is certainly not suggestive. I'm asking you why, how he came to the state's attention. Perhaps you all had a good reason. Perhaps you all had other information. Perhaps he allegedly raped other people before. It is just odd to me. I just want to know how he initially came to the state's attention in the first place. I do not know. I can look at the record and I can speculate, but I do not know. I mean, there was certainly a Social Security card of his found on the floor in Washington, D.C. on the exact spot where another sexual assault occurred with another woman. Do you know whether that information was known prior to the courtroom? I do not, but I do know that it occurred. I'm actually quite interested in Judge Thacker's question. I had the same one, but what you're telling me is that you don't know and your speculation as to why... Do you know the preparatory question, which is, were they aware of this particular person, or did they just take her to the courtroom in hopes that someone would show up, or were they... I do not know the answer to that question. I believe that he was a suspect. I believe that he was a suspect. And what is that based on? It's based on language of the officers during the trial that they noted. It looked like they knew when the petitioner went into the courtroom and that they knew he was there. So it's a fair inference from the record that they knew he was a suspect. I think it's a very cautious way. A lineup is very suggestive, and she was shown 13 persons who she was asked whether she recognized any of them, and the assumption she might take from that that the defendant or the suspect would be among the 13, and she said none of them were in the courtroom in a wig, disguised, so there wouldn't be a recognition. And there were several people who would generally fit the description, and she recognized him right away when he stood up and talked and walked. And she said, I recognize his face, I recognize his voice, and I recognize his walk. And that is a little different from a normal lineup. It was an identification. Yes, Your Honor, and one additional point to that is the petitioner makes a big deal about, oh, my gosh, she sat in the room for an hour before she saw him. Well, she was scared. She slumped down in her seat, and she was looking out of her eyes, the corners of her eyes, and then when his case was called and he walked down to the judge, she immediately recognized him. I wasn't suggesting that the method was necessarily suggestive. I was merely interested in the how the police latched on to him in the first place to put him in the lineup, and you don't... I can only speculate from the record. I do know that Van Eisenhower was named as a critical witness by this petitioner at the MAR hearing, and then the petitioner made a strategic decision not to call him, and he could have asked him that question the same way with Officer Taylor, right there in the room. And he could have easily called him and put him on the stand. Why did you, you know, was this petitioner a suspect or was he not? But, no, this petitioner chose to withhold that evidence from the MAR court and is now precluded under 2254... It's interesting that the state should use that language against petitioner, that petitioner chose to withhold evidence. That is correct, because on state review, he's presumed guilty, and this petitioner has a 100% burden, not the state. And also, Sarah Bost immediately recognized the petitioner, and Sarah Bost, eyewitness, the petitioner argues, these were sophisticated lawyers. They argued all of this business about the general unreliability of eyewitness identification. All of that was argued. They argued cross-racial identification. They argued general unreliability... Can I ask a different question? I could probably find this, but since you're here, does North Carolina at this time, in the jury instructions, were there any investigative technique type instructions? You know, in federal court now, there's often instruction given about, you know, the government's not required to use any investigative techniques. One way or the other, it's the evidence or lack of evidence that goes to establishing someone's guilt. Was there any instruction like that, that it was the evidence or lack of evidence that they should consider, and not the existence or nonexistence of any particular investigative technique? Any instruction on those lines given? I do not recall any reference to investigative technique. The jury instruction is in the joint appendix, and I really, that's as far as I could answer that question. Also, this coat, hat, and gloves, well, this coat, hat, and gloves was passed to the jury. They looked at them. They saw it. They heard the defense counsel's argument. There was no white paint chips on it. The state did not contest that. That was an uncontested matter. And the matches, the matches, the officers took the matchbooks out of the car because they were paper matches, and they looked generally similar to the matches found, paper matches found at the scene, but the officer never testified that they specifically matched. In fact, Officer Taylor testified at Joint Appendix 335 that there was no match. Now, that was on voir dire. That was on voir dire, but then when the jury came back in, the only reason the jury didn't hear that was because this petitioner didn't ask the question in front of the jury. These were sophisticated, intelligent attorneys. The Chambers Law Firm, they knew exactly what was going on in this case, what had been tested, and what they didn't want to be tested, and what they chose not to have tested. You're saying they knew that all 15 of those items had been tested? No, Your Honor, that's not what I said. You just said they knew what had been tested. They didn't. I said that they knew that the medical evidence was taken, but it had not been tested and not been specifically matched to this petitioner. They knew their client had his pubic hairs cut, so they knew something was going on here, and there were sophisticated lawyers who certainly could have had these tests done if they had wanted them. They didn't want to have them done. All these 13 items of evidence are at best neutral. They do not create a reasonable probability of a different result at trial, and they are not material under Brady. The eyewitness identification of Sarah Bost was rock-solid and iron-clad. She looked at him with intent to identify her rapist, and when she saw him, she immediately, in the 13 pictures she saw, she wasn't out to just pick anybody. She looked at 13 pictures and saw, no, no, no, that's not the man who did it, and she looked around the auditorium, she looked around the courtroom. She didn't immediately pick somebody out. She was an intelligent, articulate, inherently credible witness, and the jury believed her. Tell me a little bit about the alibi evidence. The defendant here put on some alibi evidence that I think the credibility of which was significantly called into question. Tell me a little bit about how it was called into question. Yes, Your Honor. He says that the state's evidence was weak. His alibi was terribly weak. His mother was the only witness who had him in the house from 8.25 until 8.30 until basically 10.30, and she testified that he was there. She knew part of that time they were on the telephone with a three-way call with her girlfriend and a young boy, and the rest of the time he was upstairs listening to his tapes. But she also testified that he bought these Earth Soul shoes that had the ridged shoe print, the ridged bottoms from the print that was on the banister column where whoever climbed in the window. What was weak about her alibi part? Yes, I'm getting to it, because she said he bought those shoes on May the 1st, five days after the rape. He was arrested nine days later, and the shoes were very heavily worn on the insides and outsides of the sole. The prosecutor even pointed out that the shoestring was broken and had to be re-tied. Maybe she was just mistaken. It had to be re-tied. Well, she was obviously trying to cover him because she knew that shoe print. Right. So why is she just obviously trying to cover him when she gets something wrong, but this detective is merely mistaken and not trying to cover him. That's what's confusing to me. Even if the mother made a mistake, her alibi, his alibi is still very weak because he has a period of time from about 9.40 until about 10.30 that the only way she can account for him is upstairs listening to his tapes. That is not a solid alibi defense. The solid eyewitness identification of Sarah Bost shows that this petitioner was properly convicted and that the newly discovered evidence was not material because it did not create a reasonable probability of a different result. The judgment of the district court should be affirmed. Thank you. Mr. Lopp. I want to give you time, but I want to make sure that I understand. You all seem to use different standards for materiality. You take different parts of Kyle's. He ended with this idea that it's a reasonable, the touchstone as Kyle says, the reasonable probability of a different result. That's later described as a verdict worthy of confidence or whatever it is. The touchstone, that's really the test that we're applying. It's a reasonable probability of a different result. No, that's not the test because what's missing from that is when it goes on to say and what that means under this court is that that's understanding as a verdict worthy of confidence and a trial resulting in fairness. That has been said not to be this prepondering standard but something less than a prepondering standard. The analysis is whether or not in the absence of the evidence the defendant received a fair trial. Here, in the absence of this evidence, whether it was intentional or not, the defendant didn't receive a fair trial. That seems inconsistent with what both Kyle's and Bagley actually says though because they say the touchstone is a reasonable probability of a different result. You think that is not the test? The test is whether or not in the absence of evidence the trial was fair. And Kyle's goes on to say that fairness... The court clearly said what Judge Richardson is saying. That's the test we've applied again and again. Everybody applies. Reasonable probability of a different result. They explain what the effect of that is. That's to assure a fair trial. A trial is fair but it's also to exclude challenges which are not material. I respectfully disagree with that reading of Kyle's. If you go to Kyle's where it lists all the... If we agree with the reading of Kyle that Judge Richardson and Judge Niemeyer and I, all three may have, can you still prevail? Absolutely. Maybe you should talk about that. The defendant would still prevail because the jury would have heard evidence that suggested another individual was the perpetrator and evidence that there were arguments presented to it by the prosecutor that were false. They wouldn't have been able to make those arguments. Did you say evidence that somebody else was the perpetrator? Evidence pointing away from Long is the assailant. That doesn't point to... The evidence, the most that can be said is the evidence that was collected did not inculpate him. You can twist that into anything but we have to look at it squarely. They had a bunch of evidence that was inconclusive one way or the other. You can make the arguments you said. You can tell the jury this is inconclusive and you might expect to have this and you might expect to have this and they didn't come with it. But the fact that this evidence didn't point one way or the other doesn't mean it's pointing. You say it's pointing to somebody else. What's pointing to the defendant in this case is the shoe print and the victim's testimony. Those are the big items and the question is in view of that testimony can you conclude there's clear and convincing evidence of innocence? Well that is going to the jurisdictional question and that would have to be determined by the district court and the magistrate judge spoke about the need for potentially additional discovery on that issue. I want to make three points and I hope I have the opportunity to do so. Well don't we have to review that too? That's jurisdictional. Don't we have to conclude that you had to present evidence, clear and convincing evidence of innocence. The test results. That no reasonable jury would have convicted the defendant. No reasonable jury and if you, if we conclude from this record that you didn't present clear and convincing evidence that the jury could not have convicted, isn't that the gateway that we have to decide to? And to look at that question, one must first begin with... Let's answer my question. I didn't ask you to go somewhere else. I said isn't that the gateway that we have to review? Yes. This is the gateway that has to be determined but the district court simply said that it wasn't positioned to determine that gateway and didn't need to at this time and went on to the merits. Well we conclude differently if it's jurisdictional, don't we? We're supposed to determine whether the court, district court had jurisdiction and whether we have jurisdiction. This court says in Telegis for that determination to be made, all evidence, old and new, without regard to admissibility has to be considered by the court. In the pleadings in the district court... Do you agree that includes the evidence of his prior rape in New York? I don't. I don't. Why is that not all? Under the standard that you sort of suggested so broad to include lots of things, why wouldn't it also include that evidence? If we look at all evidence, shouldn't we also look at the evidence that he was previously engaged in misconduct? It has to be relevant. And there's no evidence that he was previously engaged in misconduct. There wasn't even an indictment returned in that case. Your position though is the reason, if it was relevant, except as a hypothetical, if it was relevant, you would agree it would be considered. You just think that the evidence in this case wasn't relevant. If he had been afforded a process and that evidence indicated that he was responsible for that crime, then perhaps it would have been relevant as motives of brandy. But 404B is not limited to convictions, right? So 404B evidence that's admitted, including under North Carolina evidence law, doesn't require a prior conviction, right? It requires evidence of prior bad acts. There was no indictment returned. So to consider that evidence would certainly undermine his due process because there's no factual finding that he was ever involved in any conduct of wrongdoing in Washington, D.C. Now if I may return to the 2244B2B2 Clearing Committee Evidence Standard, the magistrate judge specifically said that there is additional material that has arised since the state court proceedings that were not turned over too long during the course of that state court proceedings that may need to be considered during that. And the appropriate thing would be to remand for that consideration under this court's precedent in Teluguy's requiring consideration of all the evidence. The three points I'd just like to get out quickly. First, with respect to the petitioner knew about the section of the statute. Well, I don't know if you got a full three points. You're in a red light and you're subject to getting ticketed. So you can wind up quickly. If I may, Your Honor. The respondent says the petitioner always knew about the sexual assault kit. On joint appendix page 1036, it's clear counsel asked for that kit and was told that one did not get collected. Thus, all this speculation about what this reasonable counsel would have did or what they could have done but chose not to do is false. They asked for it and were denied that opportunity. Second, the court in Wetzel v. Lambert, 565 U.S. 520 says no deference to state court decisions that are reasoned and have erroneous analysis. That is the position here. So this court shouldn't give deference to the state court decision. You think that's true of the factual decisions as well? Well, it has to review the entire record to determine whether those factual determinations were correct as well. But as far as the weighing of all the evidence, this court would do it in de novo, an independent reviewing federal court. And finally, I just want to speak to you, Judge Niemeyer, on the eyewitness identification in this case. I submit that it's not as strong as suggested. There were only 10 to 12 black males, according to the victim's testimony, in that courtroom. She was told that there was reason to believe. She goes into a courtroom, and there were multiple African-American males. And she has already looked at 13, and she said none of them are it. And now she's in a courtroom in disguise over in the corner, and she's trying to look around the courtroom if it's possible. And as soon as this guy stands up to go, she identifies him. This doesn't look like anybody suggested that he was there. There was no evidence that they suggested. They just said, see if you can identify somebody. And they didn't point to any particular person, and they didn't say, wait any particular time. They just had her looking, and she's sitting in the corner looking around, trying to figure out. And when he stands up, she said, that's him, and I recognize his walk, and I recognize his talk. In Joint Appendix 171, the testimony is that they had reason to believe that the assailant would be present. Second, she testified that there were 10 to 12 black males in the courtroom at the time, that she could eliminate several of them quickly because they had afros. Another one was tall and slumped over. He was quickly eliminated. Ronnie Long's father was there. She said that Ronnie Long was the only person in that courtroom who looked remotely similar to the individual who assaulted her on that evening. Given those circumstances, it's entirely different than what was later testified to by Detective Taylor that there were 12 individuals in that courtroom with the general age group of the perpetrator. This was, Long was the only one in the courtroom that could have been the person suggested by the police because he was the only one that remotely looked like the assailant. And she had been told that they had reason to believe the assailant there. Under those circumstances, it's not a strong identification. It's no different than a show-up procedure where you take somebody into the law enforcement and say, is that the person? Thank you. All right. We'll adjourn court for the day and then come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Julius N. Richardson